IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JULIUS JAMES                         )  | |
|                 Plaintiff,    ) | |
| ) | |
| vs.                                                       ) | |
| ) No. 14-cv-0317-MJR-SCW | |
| ROGER PELKER,                   ) | |
| RONALD HILLERMAN, and  ) | |
| JANE DOE,                             ) | |
|                Defendants. ) | |

# MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### Introduction and Procedural Background

*Pro se* Plaintiff Julius James, currently incarcerated at Pontiac Correctional Center, filed this case on March 10, 2014, alleging he was involuntarily injected with psychotropic medication while at Menard Correctional Center. (Doc. 1). After threshold screening, only one claims remains: that Defendants Pelker, Hillerman, and Jane Doe Nurse denied Plaintiff due process when they forcibly gave him a psychotropic medication called Haldol. (Doc. 7, p. 4).

Now before the Court is Defendants' motion for summary judgment on the issue of whether Plaintiff exhausted his administrative remedies before filing suit. Defendants Hillerman and Pelker filed the motion on December 15, 2014. (Doc. 17). The matter is ripe for ruling: Plaintiff filed his Response on December 24, 2014 (Doc. 20), and no reply was filed. For the following reasons, the Court **DENIES** the Motion for Summary Judgment. (Doc. 17).

### LEGAL FRAMEWORK

1. **PLRA's Exhaustion Requirement**

Suits brought by prisoners are governed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C § 1997e. The PLRA requires a prisoner to exhaust all administrative remedies available before

1

bringing an action concerning prison conditions. **42 U.S.C. § 1997e(a).** The exhaustion requirement of the PLRA is dependent upon the procedures established by the state in which the prison is located. *Jones v. Bock*, **549 U.S. 199, 218 (2007).** Unexhausted claims may not be brought to court. *Jones*, **549 U.S. at 211 (citing** *Porter v. Nussell*, **534 U.S. 516, 524 (2002)).**

The Seventh Circuit requires strict compliance in regards to exhaustion. "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).** This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require." *Id*. **at 1025.** If the prisoner fails to comply with the established procedures, including time restraints, the court will not consider the grievance. *Pavey*, **663 F.3d at 903.**

The purpose of the exhaustion requirement is two-fold. *McCarthy v. Madigan*, **503 U.S. 140, 145 (1992).** First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006);** *Woodford v. Ngo*, **548 U.S. 81, 89-90 (2006).** Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." *Porter*, **534 U.S. at 524;** *see Booth v. Churner*, **532 U.S. 731, 737 (2001) (noting that PLRA's requirement will help "filter out some frivolous claims.").**

Because exhaustion is a prerequisite to filing a suit, a prisoner must wait until he has completed the established process, and may not file in anticipation that administrative remedies will soon be exhausted. *Perez v. Wisconsin Dept. of Corrections*, **182 F.3d 532, 535 (7th Cir. 1999) (citing 42 U.S.C § 1997e(a));** *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** A suit filed prior to exhaustion of available remedies will be dismissed even if the remedies become exhausted while the suit is pending. *Perez*, **182 F.3d at 535.**

2. **Exhaustion Requirement under Illinois Law**

Inmates confined in the Illinois Department of Corrections must adhere to the Department's Grievance Procedures for Offenders in order to properly exhaust claims. **20 Ill. Admin. Code § 504.810.** The prisoner must first speak with their Counselor about the issues they raise; if the dispute is not resolved, a written grievance must be filed within sixty days of the events or occurrence with the Grievance Officer. **20 Ill. Admin. Code § 504.810(a).** The grievance must:

> Contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code § 504.810(b).** The grievance officer must then review the grievance and report findings and recommendations to the Chief Administrative Officer ("Warden"). **20 Ill. Adm. Code § 504.830(d)**. The prisoner then has the opportunity to review the Warden's response, and if he is unsatisfied, he may appeal to the Director through the Administrative Review Board ("ARB") within 30 days. **20 Ill. Adm. Code § 504.830(d); 20 Ill. Adm. Code § 504.850**. The ARB is then required to provide a written report to the Director of its recommendation on the grievance, and the Director "shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code § 504.850(e),(f).**

Alternatively, a prisoner "may request a grievance by handled on an emergency basis by forwarding the grievance directly to the Chief Administrative Officer." **20 Ill. Adm. Code § 504.840**. The CAO must make a determination whether the grievance shall be handled on an emergency basis. **20 Ill. Adm. Code § 504.840**. If so, the CAO "shall expedite processing of the grievance and respond to the offender, indicating what action shall be or has been taken." **20 Ill. Adm. Code § 504.840**. Once the CAO has informed the grieving inmate of its decision, the inmate

may then appeal that decision to the Administrative Review Board ("ARB") on an expedited basis. **20 Ill. Admin. Code § 504.850(g)**. A final decision of the ARB will exhaust the grievance requirement.

In certain circumstances, a prisoner may exhaust his remedies by filing a grievance directly with the ARB. **20 Ill. Admin. Code § 504.870**. Those circumstances include grievances addressing 1) placement in protective custody; 2) involuntary administration of psychotropic medication; 3) decisions regarding disciplinary proceedings that took place at an institution other than where the inmate currently resides; and 4) all other issues, with the exception of personal property issues, that occurred at a previous institution. *Id.*

### 3. Summary Judgment at the Exhaustion Stage

Typically, summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled judgment as a matter of law. *Gerhartz v. Richert*, **779 F.3d 682, 685 (7th Cir. 2015) (citing FED. R. CIV. P. 56(a)).** But when a motion for summary judgment is made with respect to a prisoner's administrative exhaustion, the first step in the sequence, as set out by Judge Posner, is for the judge to hold a hearing on the issue of exhaustion. *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008).** A case can only move onto the merits after such exhaustion issues have been decided. *Id.* When "factual issues relating to the defense of failure to exhaust administrative remedies" are up for consideration, the issues will be decided by a judge. *Id.* **at 740-41.** When there is only a question of law, a hearing is not required. *Doss v. Gilkey*, **649 F.Supp.2d 905, 912 (S.D.Ill. 2009).**

Because the only question before the Court here is a legal one, a hearing is unnecessary. The undisputed facts relating to Plaintiff's grievances establish that the ARB made the grievance process unavailable to Plaintiff.

### PLAINTIFF'S ALLEGATIONS & GRIEVANCES

The only pertinent substantive allegation from Plaintiff's Complaint is one of timing: that on April 12, 2013, Plaintiff was forcibly administered Haldol, a psychotropic drug.

Defendants filed an affidavit from Sherri Benton (who processes records for the ARB), who swears she searched the ARB's records and found one grievance submitted by Plaintiff. (Doc. 18-1, p. 3). That grievance is dated May 17, 2012, and the parties agree that the 2012 date is a typo. (Doc. 18-1, p. 5): the grievance clearly refers to an incident on April 12, 2013. (Doc. 18-1, p. 5).

The ARB received the grievance on May 20, 2013. (Doc. 18-1, p. 5). Benton reviewed the grievance approximately seven months later (in January 2014) and rejected it for failure to use the word "psychotropic." (Doc. 18-1, p. 6). Benton told Plaintiff that he should have filed the grievance with the grievance officer at his facility. (Doc. 18-1, p. 6). Benton also notes that any new grievance would be past the 60 day time frame. (Doc. 18-1, p. 6).

### ANALYSIS

The Court finds that the grievance process was unavailable to Plaintiff. There is no support in the Illinois Administrative Code (or in Seventh Circuit caselaw) for the proposition that Plaintiff must use the specific term "psychotropic" to qualify for the Administrative Code's exception that involuntary administration of psychotropic medication can be grieved directly to the ARB. *See* **20 Ill. Admin. Code. § 504.870**. The ARB was in a position to investigate what medication was administered to Plaintiff, and could have easily determined that he was administered Haldol by examining his medical records. They were also free to assume that Plaintiff had been administered psychotropic medication for the very reason that he had utilized the procedure for grieving that conduct.

The ARB also took too long to respond to the grievance. The Illinois Administrative Code specifies that the ARB will try to return grievances within 4 months if no hearing has occurred, and

within 6 months if there has been a hearing. **20 Ill. Admin. Code 504.850.** Here, the ARB took slightly more than 8 months to respond, despite the fact that they conducted no hearing. The Court would be less troubled by their insistence on a grieving inmate using the word "psychotropic" if the ARB had immediately responded to Plaintiff's grievance. That would have given Plaintiff time to correct the error. But by taking approximately 8 months to return Plaintiff's grievance, the ARB effectively made it impossible for Plaintiff to exhaust his administrative remedies.

Finally, Defendant Hillerman argues he was not been adequately named by the grievance. Plaintiff claims in his Complaint that Hillerman, a psychologist, lied to Plaintiff about him being on involuntary medication and watched as other defendants forcibly administered the medication without Plaintiff's consent. In Plaintiff's grievance, he states that unknown medical staff "witnessed or participated in this act." Under Illinois law, a prisoner must specifically name the person who is the subject or the grievance, or if not known, at least provide as much descriptive information as possible. **20 Ill. Adm. Code § 504.810 (1)**. Plaintiff did not name or describe Hillerman, but states that "unknown mental health staff" participated in the events. That is sufficient. The Court finds that Plaintiff's grievance provided as much descriptive information as Plaintiff had for Hillerman at that time, and based on the content of Plaintiff's grievance, IDOC could have easily determined who was responsible for the conduct Plaintiff alleges.

## Conclusion

Defendants' Motion for Summary Judgment on the issue of exhaustion of administrative remedies is **DENIED**. (Doc. 17). For the foregoing reasons, the Court concludes Plaintiff exhausted all available administrative remedies as to Defendants Hillerman and Pelker.

IT IS SO ORDERED.

DATED: June 22, 2015              s/ *Michael J. Reagan*
                                                          MICHAEL J. REAGAN
                                                          Chief Judge
                                                          United States District Court